# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| ALEXA HIRAMITSU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| AEROJET ROCKETDYNE HOLDINGS, | ) |
| INC., KEVIN P. CHILTON, THOMAS A. | ) |
| CORCORAN, EILEEN P. DRAKE, JAMES | ) |
| R. HENDERSON, WARREN G. | ) |
| LICHTENSTEIN, LANCE W. LORD, | ) |
| AUDREY A. MCNIFF, and MARTIN | ) |
| TURCHIN, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on December 20, 2020 (the "Proposed Transaction"), pursuant to which Aeroject Rocketdyne Holdings, Inc. ("Aerojet" or the "Company") will be acquired by Lockheed Martin Corporation ("Parent") and Mizar Sub, Inc. ("Merger Sub," and together with Parent, "Lockheed Martin").

2. On December 20, 2020, Aerojet's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Lockheed Martin. Pursuant to the terms of the Merger Agreement, Aerojet's stockholders will receive $56.00 in cash for each share of Aerojet common stock they own.

3. On January 25, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Aerojet common stock.

9. Defendant Aerojet is a Delaware corporation and a party to the Merger Agreement. Aerojet's common stock is traded on the New York Stock Exchange under the ticker symbol "AJRD."

10. Defendant Kevin P. Chilton is a director of the Company.

11. Defendant Thomas A. Corcoran is a director of the Company.

12. Defendant Eileen P. Drake is President, Chief Executive Officer, and a director of the Company.

13. Defendant James R. Henderson is a director of the Company.

14. Defendant Warren G. Lichtenstein is Chairman of the Board of the Company.

15. Defendant Lance W. Lord is a director of the Company.

16. Defendant Audrey A. McNiff is a director of the Company.

17. Defendant Martin Turchin is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

19. Aerojet is a world-recognized aerospace and defense leader that provides propulsion systems and energetics to the space, missile defense and strategic systems, and tactical systems areas, in support of domestic and international customers.

20. On December 20, 2020, Aerojet's Board caused the Company to enter into the Merger Agreement with Lockheed Martin.

21. Pursuant to the terms of the Merger Agreement, Aerojet's stockholders will receive $56.00 in cash for each share of Aerojet common stock they own.

22. According to the press release announcing the Proposed Transaction:

Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD) today announced that it has entered into a definitive agreement to be acquired by Lockheed Martin Corporation (NYSE: LMT) in an all-cash transaction with a total equity value of $5.0 billion.

Under the terms of the agreement, which has been unanimously approved by each company's Board of Directors, Lockheed Martin will acquire Aerojet Rocketdyne for $56.00 per share in cash, representing a premium of approximately 33% to Aerojet Rocketdyne's closing stock price on December 18, 2020, and a premium of approximately 42% to the Company's volume weighted average stock price ("VWAP") for the last 90 trading days.

As part of the transaction, Aerojet Rocketdyne declared a $5.00 per share pre-closing special dividend to holders of its common shares and convertible senior notes, on an as-converted basis. The special dividend will be paid on March 24, 2021, to holders of record as of March 10, 2021. The payment of this special dividend, unless revoked, will adjust the consideration to be paid by Lockheed Martin to $51.00 per share at closing. . . .

The transaction is expected to close in the second half of 2021 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by Aerojet Rocketdyne's stockholders. A transition team will be formed to allow for a seamless integration and ensure continuity for customers, employees and other stakeholders.

Advisors

Citigroup Global Markets Inc. and Evercore were co-lead financial advisors to Aerojet Rocketdyne. Jenner & Block LLP acted as M&A counsel and Gibson, Dunn & Crutcher LLP acted as Securities counsel.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

23. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

24. As set forth below, the Proxy Statement omits material information.

25. First, the Proxy Statement omits material information regarding the Company's financial projections.

26. The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate EBITDA, adjusted EBITDA, unlevered free cash flow, and adjusted unlevered free cash flow; (ii) projected net income; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

27. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

28. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors, Citigroup Global Markets Inc. ("Citigroup") and Evercore Group L.L.C. ("Evercore").

29. With respect to Citigroup's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iv) the net debt used in the analysis; and (v) the number of fully diluted shares of Aerojet common stock outstanding.

30. With respect to Citigroup's Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) Citigroup's basis for applying multiples of 9.5x to 10.9x; (ii) the net debt used in the analysis; (iii) the number of fully diluted shares of Aerojet common stock outstanding; and (iv) the individual inputs and assumptions underlying the discount rate used in the analysis.

31. With respect to Citigroup's research analyst price targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; (ii) the sources thereof; and (iii) the individual inputs and assumptions underlying the discount rate used in the analysis.

32. With respect to Citigroup's premiums paid analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

33. With respect to Evercore's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal values used in the analysis; (iii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iv) the total debt, cash and marketable securities, net environmental asset position, forecast cash contributions to fund pension liabilities, and value of real estate used in the analysis; and (v) the number of fully diluted shares of Aerojet common stock outstanding.

34. With respect to Evercore's research analyst price targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

35. With respect to Evercore's Illustrative Present Value of Future Share Price analysis, the Proxy Statement fails to disclose: (i) Evercore's basis for using multiples of 20.6x to 22.6x; and (ii) the individual inputs and assumptions underlying the discount rates used in the analysis.

36. With respect to Evercore's premiums paid analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

37. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. Third, the Proxy Statement fails to disclose the timing and nature of all communications regarding the future employment and directorship of the Company's officers and directors, including who participated in all such communications.

39. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Aerojet

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Aerojet is liable as the issuer of these statements.

43. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

44. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

45. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

46. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

47. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Aerojet within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Aerojet and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of

the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

53. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 29, 2021                **RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*